DAVIS, J.
Churchill Development, Inc. appeals the final judgment which denied its claim for unlawful detention of real property and granted to Prime Outdoor Group, L.L.C., specific performance of its option to purchase a perpetual easement on property owned by Churchill. We reverse.
In 1998, Whiteco Outdoor Advertising entered into a lease agreement with Cheng Liu, as Trustee, for an easement on Liu’s property that would allow Whiteco to erect and maintain a billboard. Prime is the successor in interest to Whiteco in that agreement. In August 2000, Churchill negotiated to purchase that parcel of Liu’s property where the billboard had been erected. At the real estate closing on August 11, 2000, Churchill advised Liu that it did not want the billboard to remain on the property. Liu then signed a letter that was mailed to Prime, advising Prime that he was exercising certain rights under the addendum to the lease and was canceling the agreement. The closing was finalized the next day, August 12; however, Prime did not receive the letter until August 14.
On September 25, Prime sent a letter to Liu and Churchill purporting to exercise its rights under the lease to purchase a perpetual easement on the property. Enclosed in the letter was an unsigned check payable to Churchill in the amount of the purchase price as established by the lease agreement. Churchill apparently disregarded this letter. When Prime subsequently refused to remove the billboard, Churchill brought an action for unlawful detention of the property. Prime filed a counterpetition seeking specific performance. After denying both parties’ motions for summary judgment, the trial court held a nonjury trial. The court then entered final judgment denying Churchill’s claim for unlawful detention and granting Prime’s claim for specific performance.
Churchill first argues that the trial court erred in finding that Liu’s letter was not a valid cancellation of the agreement. We agree. The addendum to the lease provided that if any provision contained in the lease was inconsistent with the addendum, the terms of the addendum controlled. The addendum provided:
*766 During the terms of Lease, if the Lessee or Lessor deem it necessary to relocate the Sign elsewhere on the property for whatever reason, then both Lessee or Lessor shall have the right to move the Sign to a new location or remove the Sign and cancel the Lease. In the event of the removal, the Lessor shall refund the Lessee for any prepaid but unearned rent.
Liu testified at trial that he negotiated a sale of approximately eight of the twenty acres that he owned at this location. The sign was located on that eight acres, and Churchill advised him at the August 11 closing that it did not want the sign to remain on its property. Although Liu asked his real estate agent about relocating the sign to a site on his remaining property, the agent explained that Liu could not do so because the zoning restrictions required a specific distance between such signs, and since there was another sign on his remaining property, the subject sign could not be relocated.[1] Liu testified that he then decided to exercise his'rights under the addendum to cancel the lease agreement. Counsel for Churchill prepared for his signature the letter advising Prime of the cancellation. Liu believed that he had canceled the lease by sending the letter.
Prime argues that this court should read into the terms of the addendum an implied duty of good faith that would require prior notice of the desire to relocate and some attempt to negotiate a solution to the need prior to canceling the agreement. We reject this suggestion. The express terms of the addendum provide Liu the right to unilaterally cancel the agreement for any reason. The addendum requires neither prior notice nor imposes a duty to negotiate a resolution. To read such requirements into this provision alters the express terms of the addendum. See Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc., 785 So.2d 1232 (Fla. 4th DCA 2001).
Prime also argues that Liu did not have the contractual right to cancel the lease because, according to Prime, Liu was not the owner/lessor at the time he signed the letter, the closing having already been completed. However, Liu’s testimony was clear that he signed the letter before the closing actually began. He testified that after he signed the letter, he and Churchill had extended discussions regarding a utility easement issue that had to be resolved before Churchill would proceed to closing. Furthermore, the closing was not finalized until the following day. Liu was, without question, the owner/lessor at the time he signed the letter.
Finally, Prime argues that the cancellation was not effective until it received the letter on August 14, by which time, Prime argues, there was no question that Liu was no longer the owner/lessor. We reject that argument as well. The terms of the addendum required no prior notice of the cancellation, and the same was effective upon Liu’s executing the letter advising that he had exercised his rights. Accordingly, we conclude the trial court erred in failing to determine that Liu had effectively canceled the lease agreement on August 11 as provided by the terms of the addendum. Prime therefore had no further rights under the lease agreement.
However, even if we concluded that Liu’s attempt to cancel the agreement was *767 ineffective, Prime’s position would still fail because Prime failed to effectively exercise its right to purchase the perpetual easement under paragraph nine of the agreement. While the lease agreement gave the lessee the option to purchase a perpetual easement, the lease restricted the lessee’s exercise of that option. Specifically, the lease provided that once the lessor decided to sell the property, he had to give the lessee notice, and the lessee had to exercise that option within fifteen days.
Paragraph nine of the lease continues:
... If Lessor does not give Lessee the aforesaid notice prior to the closing of such sale or other transfer, this option shall continue to attach to the property of which the Site is a part, and Lessee may exercise its option at any time after becoming aware on its own of such sale or other transfer. Lessee may Exercise this option within 15 days of Lessee being notified by Lessor or purchaser of such sale or other transfer. At Lessee’s discretion, Lessee may exercise its option at any time after otherwise becoming aware of such sale or other transfer
[[Image here]]
Prime argues that since Liu did not give prior notice of the sale, it has the option to purchase the perpetual easement. Churchill contends that even if Prime has the option, it did not timely exercise the right. Churchill suggests that since the letter from Liu that attempted to cancel the lease put Prime on notice of the sale, Prime had but fifteen days within which to exercise the option and failed to do so.[2] Prime contends that the letter from Liu was not from the “Lessor” as Liu had sold the property on August 11 or 12 and by the time it received the letter, Churchill was the “Lessor,” not Liu.
This argument is without merit. If the provisions of paragraph nine were to be interpreted as Prime suggests, the reference to the “purchaser” in that provision would be meaningless. A plain reading of the lease indicates that Liu was the “Lessor” under the agreement and Churchill was the purchaser. Accordingly, if Prime received notice of the sale from either Liu or Churchill after the closing, Prime’s right to exercise the option was limited to fifteen days by paragraph nine. Since the attempted exercise was made more than fifteen days after receiving notice, the attempt was a nullity and the trial court erred in granting Prime’s request for specific performance.
Accordingly, we agree with Churchill that the trial court erred. We reverse the final judgment and remand with directions to the trial court to enter a final judgment in favor of Churchill.
Reversed.
CASANUEVA and SALCINES, JJ., concur.

. Jeffery Thompson, general counsel for Prime, testified at trial that not only were the distance requirements a problem, but the land use ordinances had been amended so that if the sign were taken down from its present site, it could not be relocated to any site on the property owned by Liu or Churchill.

. It is undisputed that Prime received the letter on August 14, 2000, and sent its letter attempting to exercise the option on September 25, 2000.